Kinsey C. J.
delivered the following charge to the jury, which was fully concurred in by Smith J.
The action which you have been impanelled to.try, is an action on the case in which the plaintiff declares, that on the 1 st of October 1793 he was possessed of a newly erected sawmill, on his own soil and freehold, and ádjoining to a certain stream running and flowing through the same, of which rivulet he ought to have the free and uninterrupted use for the purpose of turning his mill. That the defendant on the said 1st of October, and at divers times between that day and the 1st of August 1794, stopped a great part of the water of this stream, so as to clog the mill and prevent its being made use of. For the injury thus sustained the present suit is brought, and he demands damages proportionate to its amount.
This is a summary of the plaintiff’s case as stated in the declaration; to this declaration the defendant has pleaded not guilty, so that the question for your determination is, whether the defendant has done any injury to the plaintiff which will *463 support this action, and if he has, what compensation in damages the plaintiff ought to recover,
The determination of the first question seems to involve ¡■ome important principles of law, as well aa facts. Upon a subject which appears to be attended with no small difficulty, It is not easy to lay down upon a sudden, principles not open to some kind of objection, and which will tend to guard and preserve the just rights of all.
In general it may be observed, when a man purchases a piece of land through which a natural water-course flows, he lias a right to make use of it in its natural state, but not to stop or divert it to the prejudice of another. Aqua currit, et debet cur rere is the language of the law. The water flows in its natural channel, and ought always to be permitted to run there, so that all through whose land it pursues its natural course, may continue to enjoy the privilege of using it for their own purposes. It cannot legally be diverted from its course without the consent of all who have an interest in it. If it should be turned into another channel, or stopped, and ibis illegal step should be persisted in, I should think a jurjr right in giving almost any valuation which the party thus injured should think proper to affix to it. This principle lies at the bottom of all the cases which I have met with, and It is so perfectly reasonable in itself, and at the same lime so firmly settled as a doctrine of the law, that it should never be abandoned or departed from.
The facts which have appeared from the evidence, so fax as it is necessary to stele them, in order to render those remarks which it is thought proper to make intelligible, are as follows.
It appears that Parker the defendant, previous to the erection of Merritt’s mill, or the digging of the tremh which has led to this suit, had erected a dam on a branch of the M ceneneus in order to raise a head of water sufficient to turn a sawmill which he had before built; and that he had for se\ oral years been in possession of this dam, saw-mill, and the water raised by the dam, as far as the nature of tbe thing admits of possession, without any appearance of dissatisfaction or com» plaint.
*464 It appears that in tac year it"92 Merritt had a design ó> build another saw-mill, and to avail himself of the dam already erected by Parker and the water raised by it. In order to effect this, he cut a trench through his own land from the water in the dam, so as to convey a part of it into a small rivulet also in his own land, for the purpose of turning the mill which he either had then erected or intended to erect. This rivulet, or small stream, it is further to be observed passed through a part of Par kept land before it disembogued itself.
These facts have not been disputed by either party. On examining the Acts of Assembly, it appears, that in May 1793. Parker obtained an act of the Legislature confirming the dam which he had built upon the Rancocus’, but by the terms of this law, he is not to do any injury to the publish or-to individuals, and for every injury which may be occasioned by this dam, he is answerable in damages.
From this statement of the circumstances, I am satisfied that Parker was possessed of the mill-dam, and of the water retained by that dam, as early as the year 1780; at ant rate long before the erection of the plaintiff’s mill, and before the cutting of the trench for the purpose of drawing the water out of the dam. The questions arising from these facts, and upon which you are to determine, are, — had the plaintiff a right to cut the canal in question, and draw the water out of the defendant’s pond? If he had, — had he a right to force more water over the defendant’s land than would natural!;run over it? — and whether the defendant had not a right to resist him in a step of .this kind, by the erections of any works whatever upon his own land calculated to effect ibis object? These questions are minutely connected with each other; — and upon the determination which you shall give to them or some of them, the present action depends.
For my own part I confess, that if what some if not all the plaintiff’s witnesses have sworn be true, that there is water sufficient for both mills, and that the defendant sustained but little if any injury by the passage of the water through his land, I should have been happy if a compromise could have beet?, made, and this suit prevented by a friendly arrangment. *465 Wishes of this kind, however, are useless now, because neither the Court nor the jury can prescribe the terms oi a compromise, and it should not be permitted to operate upon our minds. We are called upon to carry the law into execution, and further than this we have no concern in the disputes between the parties. It becomes necessary' therefore to state to you the law which is applicable to the occasion.
Upon the best consideration which it has been in our power to bestow upon the subject since the commencement of the trial, we are of opinion that the plaintiff had no right to cut' the trench or canal, and thus to draw out the water, which the defendant by the erection of the dam had appropriated to his own use, and had acquired a property in, some time before.
Should this however be doubtful, and admitting the plaintiff had a right to use the water, and to cut the trench in order to enable him to use it, still we think, that he could not exercise his right in such a manner as to cause the flow of an additional quantity of water over the defendant's land without his consent,
Further, we think, that if one man by any contrivance causes to flow over the land of another a greater quantity of wa~ ?er than it is naturally subjected to, against his will, or without his consentí such other has a legal right to resort to any device, or may erect any banks, dams &c. on his own land, to prevent ibis additional current of wateri and if any consequences injurious to the first wrong-doer result from this course, he roust submit to them, and cannot recover compensation iu damages. In the present case it is impossible that Parker could discriminate between the water that was drawn from the creek, and that which belonged naturally to the rivuletj neither could he prevent the one from flowing into his land without keeping- out the other also.
It is unreasonable, and the doctrine cannot be countenanced „ that when one has erected a dam, and at a considerable expense has appropriated water to his own use, another person by' cutting a canal shall be permitted to diminish his supply,, and avail himself of the labour and work of the original owner, without defraying any portion of the expense that had been inemredj or undertaking to assist in keeping these works in *466 repair. It would be equally unreasonable that one man should have aright to turn mors water over the land of his neighbour than would naturally go in that direction; and so far as regards the right, it is altogether immaterial whether it may be productive of benefit or injury. No one has a right to compel another to have his property improved in a particular mannerj it is as illegal to force him to receive a benefit as to submit to an injury.
Note. See Palmer et al. v. Mulligan. et al. 3 Caines Rep. 30V. and Suckrider et al. v. Beers et al. 10 Johns. 241. Bealy v. Shaw, S East 208. Brissel v. Sholl 4 Dali. 211.
In the light therefore in which we view this subject, whether the drawing of the water from the pond by means of the trench, or the causing an additional quantity of water to flow through the lands of the defendant, was productive of benefit or injury, are in my opinion, questions into which we have no right to examine. It is sufficient that the plaintiff •pursued a course not warranted by the law; and the defendant has only adopted measures to prevent the consequences of this first act from affecting his own property, and our opinion is, that he was authorized by the law to do what he has done.
Verdict for Defendant,